RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE __11/21/11__
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

TEDDY L. SPEARMAN                       CIVIL NO. 10-1712

VERSUS
                                        JUDGE DEE D. DRELL
FEDERAL BUREAU OF PRISONS, ET AL.       MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is the *pro se* complaint of Teddy L. Spearman (Spearman), filed *in forma pauperis* and pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics.[1] Spearman is an inmate in the custody of the United States Bureau of Prisons (BOP) and is currently incarcerated at the United States Penitentiary in Florence, Colorado. At all times relevant to the claims made in the complaint, Spearman was incarcerated at the United States Penitentiary in Pollock, Louisiana (USP Pollock).

Spearman initially named the BOP, Warden Joe Keffer, Lt. Alice Headspeth, Officer Fredrick Pennywell, and Dr. Joel Alexandre as defendants and asserted various claims against them which stemmed from an assault on Spearman by five or six inmates who were able to enter his housing unit despite not being assigned thereto. After

---

[1] In Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. §1983.

review of the complaint and report and recommendation by the undersigned, the district judge entered a judgment dismissing all claims against the BOP and Joe Keffer with prejudice for failure to state a claim. (Doc. 9 and 14). Thus, the remaining defendants are Alexandre, Headspeth and Pennywell[2] and the only claims against them are for failure to protect and deliberate indifference to medical needs.

On August 3, 2011, Alexandre and Headspeth filed a motion for summary judgment (Doc. 42). Spearman responded on September 30, 2011 with what is entitled "Motion for Summary Judgment"; however, as is made clear in his reply to Alexandre and Headspeth's opposition to his motion for summary judgment, the motion is intended to encompass a motion for summary judgment, an opposition to Alexandre and Headspeth's motion for summary judgment and a request to verify his complaint (Docs. 50, 52, 53). All of the aforementioned motions for summary judgment and oppositions and replies thereto are currently before me for report and recommendation.

## FACTS

According to Spearman, he and his cell mate engaged in an altercation on or about January 20, 2009 and thereafter, Pennywell

---

[2] On June 9, 2011, default was entered against Pennywell in this action for failure to file an answer. However, a default judgment has not been issued as Spearman has not filed a motion requesting such relief. This report and recommendation does not address the merits of claims made against Pennywell.

2

sent them to speak with Headspeth. Spearman claims Headspeth told the cell mate that if anything was to happen to Spearman, he would be held responsible and placed in lockdown. Headspeth also told Spearman that due to overcrowding, she was unable to change his cell assignment but that Pennywell would keep an eye on him.

On February 11, 2009, Spearman was assaulted by five or six inmates who "entered [Spearman's] unit from the compound through the metal detector with weapons undetected" due to Pennywell abandoning his post. In the attack, Spearman suffered lacerations to his head and a serious break to his leg. He underwent emergency surgery for the broken leg and rods and plates were implanted to repair it. Staples and bandages were used to treat his head injury.

Upon return to USP Pollock, Spearman was housed in a prison hospital observation room for several days. Upon determining that he could ambulate with a crutch, he was released to the Special Housing Unit (SHU) where he remained until his transfer. Throughout this time, Spearman had access to and utilized the USP medical staff. He was also seen by outside doctors and physical therapist who carefully monitored his progress.

## SUMMARY JUDGMENT STANDARD

As the Fifth Circuit Court of Appeals explained in <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 635 F.3d 675, 680 (5th Cir. 2011):

> A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended rule contains no substantive change to the standard. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)[W]e consider all evidence in the light most favorable to the party resisting the motion. <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 407 (5th Cir.1983).

(Quotations and internal footnote references omitted.)

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See <u>Celotex</u>, 477 U.S. at 325, 106 S.Ct. 2548; see also <u>Lavespere</u>, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant

may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See id. at 325, 106 S.Ct. 2548; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994); Austin v. Will-Burt Company, 361 F.3d 862 (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Id.

## LAW AND ANALYSIS

### Failure to Protect

Spearman contends that Headspeth failed to protect him from the assault carried out by the group of inmates who were not assigned to his housing unit. To succeed on a failure to protect claim, Spearman must show (1) he was incarcerated under conditions posing a substantial risk of harm, and (2) the prison official was deliberately indifferent to his safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer v. Brennan, 511 U.S. 825, 835 (1994). Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show

solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw that inference. Id.

Spearman wishes to equate Headspeth's alleged knowledge of the altercation with his roommate to knowledge that he would be attacked by the group of inmates. Spearman's cell mate was not among the group of inmates who attacked him. None of Spearman's allegations nor any of the evidence in the record connect his cell mate to the attack. Accordingly, even if Headspeth knew about the altercation with the cell mate, a fact she denies, it does not show she was aware or should have drawn the inference that the group of inmates posed a risk to Spearman's safety.

The same is true for the allegation that Headspeth knew Pennywell was leaving his post. Even if Headspeth knew about Pennywell's conduct, there are no allegations nor evidence showing she should have drawn the inference that the inmates would gain access and assault Spearman. Spearman himself was unaware of the risk the group of inmates posed to his own safety.

As the record lacks evidence that Headspeth acted with deliberate indifference to Spearman's safety, all claims against her should be dismissed with prejudice.

Deliberate Indifference to Medical Needs

Spearman also argues that Alexandre was deliberately

indifferent to his medical needs. Specifically, he complains that he was released from the prison hospital to the SHU only five days after surgery; he was not provided with either a handicapped cell or equipment; he was denied recreational time so he could not perform his physical therapy exercises; and, he was denied follow up treatment with outside physicians.

In order to show that his medical care violated the Eighth Amendment, an inmate must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle v. Gamble, 429 U.S. 97, 106 (1976). As stated by the Fifth Circuit in Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752 (5th Cir. 2001), deliberate indifference is a high standard to meet. Id. at 756, citing Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). A prisoner must submit evidence that the prison official(s) "refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for serious medical needs." Domino at 756, citing Estelle, 429 U.S. at 107.

Despite his insistence to the contrary, Spearman's claim amounts to nothing more than a disagreement with medical treatment. The medical evidence presented contains documents which show Spearman was released from the prison hospital when he was

7

ambulatory and no longer needed to be observed. While he may have preferred to remain in the prison hospital, he has failed to show such care was necessary and intentionally denied.

Also, contrary to his assertions, Spearman continued to receive treatment for his injuries from both prison medical staff and outside health care providers. Though his head injury was serious, it healed well and fairly quickly. There is nothing to indicate that it required the follow up treatment that Spearman would have the court believe. Nor is there any medical evidence proving his claims of severe headaches and/or distorted vision.

His more severe injury was his leg and it was treated properly. Following surgery, Spearman was monitored by USP Pollock medical staff and taken to his follow up appointments with his outside physician and physical therapist. The notes from these visits indicate that the doctor and Spearman were both pleased with the way the leg was healing. The materials used to rebuild the leg were staying in place and the leg was healing as well as anticipated. No evidence of a leg deformity is mentioned by those at USP Pollock or outside the facility.

Spearman's contention that he was denied the opportunity to engage in physical therapy because he was denied outside recreation also lacks merit. The medical records show he was provided with exercises he could perform on his own without the need for any outside equipment. Whether or not he performed the exercises was

his choice.

Finally, Spearman's claim that he was denied a handicapped cell and/or equipment amounts to nothing more than a claim of inconvenience. There is no statement by Spearman nor any evidence in the record that he requested an accommodation from Alexandre or any other member of the prison staff. Further, he has not alleged any harm attributable to not having either a handicapped cell or equipment. There are no allegations that he was unable to shower or slipped and fell while showering. Without an injury, adverse health consequence or serious medical need, there cannot be a constitutional violation.[3]

Accordingly, Spearman's claims that Alexandre was deliberately indifferent to his medical needs should be dismissed with prejudice.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that Spearman's motion for summary judgment (Doc. 50) be DENIED.

IT IS FURTHER ORDERED that Headspeth's and Alexandre's motion for summary judgment (Doc. 42) be GRANTED and all claims against them be DISMISSED WITH PREJUDICE.

---

[3] It is worth noting that Spearman's vague complaint of discrimination does not establish a claim under the Americans with Disabilities Act. There is no evidence that a major life activity, such as walking, was substantially limited. At the time he was released to the SHU, he was ambulatory and able to care for himself.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDING, CONCLUSION, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN THE FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana this 18th day of November, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE